IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:15-CV-00070-GCM

| | |
|---|---|
| ELIZABETH W. WILLIAMSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment and Memorandum in Support (Doc. No. 13); both filed on December 4, 2015; and Defendant Commissioner's Motion for Summary Judgment (Doc. No. 10), filed on September 10, 2015. Plaintiff, through counsel, seeks judicial review of the Administrative Law Judge's determination, upheld by the Appeals Counsel, that she was not disabled under the Social Security Act ("the Act"). For reasons set forth below, Plaintiff's motion for Summary Judgment is **DENIED**, Defendant's Motion for Summary Judgment is **GRANTED**, and the Commissioner's Decision is **AFFIRMED**.

## I. BACKGROUND

On January 27, 2012, Plaintiff Elizabeth W. Williamson, filed a Title II application for a period of disability insurance benefits. (Tr. 11) Plaintiff initially alleged disability beginning January 1, 2005, however amended the alleged onset date to July 12, 2015. (Tr. 11) Her claims were initially denied on April 13, 2012 and were again denied upon reconsideration on May 3, 2012. (Tr. 11) Plaintiff filed a written request form hearing on May 21, 2012. (Tr. 11) A hearing was held on September 27, 2913 before Administrative Law Judge ("ALJ") Robert Egan in

Charlotte, North Carolina. (Tr. 11, 24) Plaintiff, represented by counsel, testified at the hearing and amended her alleged onset date to July 12, 2010. (Tr. 11)

The ALJ issued a written decision on December 30, 2013 finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 11, 24) On April 9, 2015 the Appeals Council denied Plaintiff's request for review. (Tr. 1) Thus, the Administrative Law Judge's decision became the final decision of the Commissioner of Social Security in the Plaintiff's case. (Tr. 1) Pursuant to 42 U.S.C. § 405(g) and 1383(c) Plaintiff has a right to review of the Commissioner's decision. She filed this timely complaint on June 10, 2015. (Doc. No. 1), and the parties' Motion for Summary Judgment are now ripe for review.

## II. STANDARD OF REVIEW

Judicial review of a final decision of the Commissioner in Social Security cases is authorized pursuant to 42 U.S.C. § 405(g) and is limited to consideration of (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner applied the correct legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* District courts do not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Rather, they must uphold the decision of the Commissioner, even in instances where they would have come to a different conclusion, so long as the Commissioner's decision is supported by substantial evidence. *Lester v. Schweiker*, 683 F.2d 838,841 (4th Cir. 1982). In reviewing for substantial evidence, a court should not undertake to re-weigh conflicting

evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig*, 76 F.3d at 589. The ALJ, and not the court, has the ultimate responsibility for weighing the evidence and resolving any conflicts. *Hays*, 907 F.2d at 1456. The issue before this Court, then, is not whether the Plaintiff is disabled, but whether the ALJ correctly applied the relevant law and reached a finding that is supported by substantial evidence.

### III. ANALYSIS

The ALJ considered whether the Plaintiff was "disabled" under the Social Security Act between her alleged onset date of July 12, 2010 and his decision date of December 20, 2013. (Tr. 11, 24) To establish she is entitled to benefits, Plaintiff has the burden of proving she was disabled within the meaning of the Act during this period. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

As an initial matter, claimant must meet the insured status requirement of the Social Security Act. If the ALJ finds the claimant was insured during the relevant period, the ALJ uses a five step sequential evaluation process, pursuant to 20 C.F.R. §404.1520 and 20 C.F.R. § 416.920, for determining disability claims. If the ALJ determines that a claimant is conclusively disabled, or not disabled, at any step, the inquiry ends and the ALJ need not proceed to other steps. Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medically determinable impairment or a combination of impairments that is severe and meets the twelve month durational requirement set forth in 20 C.F.R. § 404.1509 and 20 C.F.R. §416.909; (3) whether the claimant's impairment or combination of impairments meets or medically equals one of The Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant has the residual functional capacity ("RFC") to perform the requirements of her past relevant work; and, if unable to perform the requirements of past

3

relevant work, (5) whether the claimant is able to adjust to other work, considering her RFC and vocational factors (age, education, and work experience). If the claimant is able to adjust to other work, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i-v); *Id.* § 416.920(g). The claimant bears the burden of production and proof during the first four steps of the inquiry. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work is available in the sufficient numbers in the national economy which the claimant could perform. *Id.* at 1205 (citation omitted).

Here, the ALJ found that Plaintiff was insured through December 31, 2013. (Tr. 1) At step one in the analysis, the ALJ determined that while Plaintiff had worked after the alleged disability onset date, her work did not rise to the level of substantial gainful activity. (Tr. 13) Plaintiff also obtained unemployment benefits from North Carolina for the entirety of 2011. (Tr. 13) At step two, the ALJ found that Plaintiff had a severe mood disorder under 20 C.F.R. §404.1520(c). (Tr. 14). The ALJ also noted that Plaintiff was injured in a car accident in early 1975, and was discharged later that year with "neurotic depression, (reactive depression)" and post-concussional chronic brain syndrome. (Tr. 14) The ALJ also considered Plaintiff's psychological evaluations from 2012 which stated the Plaintiff had a mild form of major depressive disorder which did not impact her ability to understand, retain and follow instructions. (Tr. 15) The ALJ also noted that Plaintiff's obesity diagnosis had only a minimal impact on her ability to perform basic work activities. (Tr. 16)

At step three, the ALJ found the Plaintiff's mental impairment did not meet or medically equal the criteria of the Listings. (Tr. 16-17) Specifically, the ALJ concluded that the Plaintiff's mental impairment did not meet or medically equal the Listing for Affective Disorders or Anxiety-Related Disorders. (Tr. 16); s*ee* 20 C.F.R. 404, Appendix 1, Subpart P, 12.04, 20 C.F.R.

4

404, Appendix 1, Subpart P, 12.06. At step four, the ALJ found that Plaintiff had no past relevant work. (Tr. 23) Over the past fifteen years the Plaintiff worked almost continually, but did not hold a single position where her earnings met the substantial gainful activity threshold. The ALJ found the Plaintiff had no exertional limitations, however she had nonexertional limitations that limited her to performing "simple, routine, and repetitive tasks" of unskilled work. (Tr. 17, 23).

At step five, the ALJ considered the Plaintiff's age, education, work experience and residual functional capacity and determined there were jobs that existed in significant numbers in the national economy she could perform. (Tr. 23) The Plaintiff was 62 years old, with at least a high school education, and transferability of skills was not at issue because the Plaintiff did not have past relevant work. (Tr. 23) The ALJ determined that Plaintiff could perform all or substantially all of the exertional demands at any given level of exertion, so the Medical-Vocational Guidelines directed a conclusion of "disabled" or "not disabled" depending on her specific vocational profile. (Tr. 23) Because Plaintiff had only nonexertional limitations, section 24.00 of the Medical-Vocational Guidelines provided the framework for decision making. (Tr. 24) The ALJ found Plaintiff's "moderate" nonexertional limitations in the ability to "maintain concentration, persistence, or pace," have little or no effect on her ability to perform work, and that she would be able to perform the range of unskilled work. (Tr. 24) Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 24)

On appeal to this Court, Plaintiff presents the following assignments of error: (1) remand is required by *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015)*;* (2) the ALJ erred by failing to employ a Vocational Expert; (3) the ALJ failed to consider Plaintiff's GAF scores; (4) the ALJ failed to consider all of Plaintiff's diagnosed impairments and "cherry picked" evidence in formulating Plaintiff's Residual Functional Capacity; and (5) the ALJ's treatment of Plaintiff's

5

2011 receipt of unemployment compensation is not supported by substantial evidence. (Plaintiff's Memorandum in Support, Doc. No. 13 at 4–24)

### A. *Mascio v. Colvin*

In *Mascio v. Colvin*, the Fourth Circuit held that the ALJ erred by "not conducting a function-by function analysis, by ignoring (without explanation) [the claimant's] moderate limitation on her ability to maintain her concentration, persistence or pace, and by determining [the claimant's] residual functional capacity before assessing her credibility." 780 F.3d at 633-34. Plaintiff argues that all three *Mascio* errors are present in this case. (Plaintiff's Memorandum in Support, Doc. No. 13 at 5).

Under the *Mascio* framework, the ALJ cannot ignore a claimant's moderate limitations maintaining concentration, persistence, or pace. In *Mascio*, the Court determined that the ALJ erred by providing a hypothetical to a vocational expert that accounted for Plaintiff's physical limitations but did not address her difficulties maintaining concentration, persistence, and pace. *Mascio*, 780 F.3d at 637-38. As the Court explained, "the ability to perform simple tasks differs from the ability to stay on task," and only the ability to stay on task addresses the issues related to concentration, persistence, or pace. *Id.* The opinion suggests that a simple restriction to simple, routine, and repetitive tasks does not, in and of itself, account for an individual's ability to stay on task. *Id*. at 637-38. However, where a claimant's limitations "do not translate into a limitation" in her residual functional capacity or do not affect the ability to perform work, the error may be harmless. *See id.* at 638.

In the instant case, unlike in *Mascio*, the ALJ explained that Plaintiff's limitations in concentration, persistence, and pace did not impact her ability to work. Although the ALJ noted Plaintiff's "moderate difficulties" in regard to concentration, persistence, or pace, he also cited

6

evidence that she worked in a stressful position as a certified nursing assistant. (Tr. 16, 19-20) Moreover, she was entirely independent: driving, living alone, and managing her personal finances. (Tr. 16) The ALJ also provided medical testimony that Ms. Williamson was able to "understand, retain, and follow instructions appeared to not be impaired" and that her ability to tolerate stress was only mildly impaired. (Tr. 16) After reviewing treatment notes from Plaintiff's counseling sessions (Tr. 20-21), the ALJ found "[a]t various points throughout the record, notes indicate the claimant is 'happy' about her part time employment situation, that she is doing well, and that her mental impairments do not impede her ability to work." (Tr. 21) In sum, the ALJ's assessment of Plaintiff's mental limitation is distinguishable from *Mascio*, because the ALJ determined based on the record that Plaintiff's limitations do not impact her ability to work.

In *Mascio*, the Court also held that the ALJ committed reversible error by failing to conduct a proper function-by-function analysis. *Mascio*, 780 F.3d at 637. When determining a claimant's RFC, the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . only after that may [RFC] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Id.* at 636 (quoting SSR 96-8P, 1996 WL 374184, at *1 (S.S.A. July 2, 1996)). The ALJ must also discuss how the evidence supports the conclusion with specific facts. *Id.* Though it declined to adopt a *per se* rule requiring remand in the absence of an adequate function-by function analysis, the Fourth Circuit cautioned that "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636.

7

Plaintiff cites five specific state agency medical consultant findings that the she believes ALJ did not properly address: (1) her ability to respond to changes in the work setting; (2) to work with others without being distracted by them; (3) to complete a normal workday or workweek without psychologically based symptoms and perform at a consistent pace; (4) interact with the general public appropriately; (5) work with coworkers appropriately without distracting them or behaving in an extreme manner. (Plaintiff's Memorandum in Support, Doc. No. 13 at 6) She argues that, although the ALJ afforded substantial weight to the state agency expert, the ALJ "wholly ignored" the five functions listed above and "implicitly rejected" the expert's opinion that Ms. Williamson had moderate difficulties maintaining social functioning. (Plaintiff's Memorandum in Support, Doc. No. 13-1 at 6)

Here, the Court finds the ALJ conducted adequate function-by-function analysis of Plaintiff's nonexertional limitations. The ALJ noted the claimant had mild difficulties in social functioning, however that she socialized with friends, met with a support group every weekend, and interacted with clients during her part-time job. (Tr. 16) The ALJ also cited Dr. Broman-Fulks's assessment, which found Plaintiff was able to relate to others, including fellow workers and supervisors, and that her ability to understand, retain and follow instructions was not impaired. (Tr. 16) With regard to concentration, persistence, pace, the ALJ decision determined there were "moderate difficulties," but the ability to tolerate stress and pressures associated with day-to-day activity was only "mildly" impaired. (Tr. 16-17) Additionally, the ALJ found that Plaintiff's depression and anxiety symptoms had greatly improved over the last several years, and that during the relevant period she worked a physically and emotionally demanding job as a certified nursing assistant. (Tr. 19-20) Indeed, none of Plaintiff's treating professionals provided limitations on her work or other activities, or opined that she lacked the ability to work. (Tr. 23)

Similarly, the State agency medical consultants determined that Plaintiff was able do unskilled work in a low-stress environment. (Tr. 23) Based on Plaintiff's improvements, however, the ALJ found the low-stress restriction to be unnecessary.

In short, the ALJ considered Plaintiff's mental health history and determined that it had a very limited effect on her ability to work. Although his conclusion that improvements in Plaintiff's condition did not require a low stress environment differed from other opinions, it was supported by substantial record evidence. Moreover, the fact that the ALJ failed to mention a handful of characteristics mentioned by the state agency consultants is not dispositive, as the ALJ is not tasked with the "impossible burden of mentioning every piece of evidence" in the record. *Brown v. Colvin*, No. 2:12CV70-RLV, 2014 WL 4667041, at *6 (W.D.N.C. Sept. 18, 2014) (quoting *Parks v. Sullivan*, 766 F. Supp. 627, 635 (N.D. Ill. 1991)). Overall, the ALJ viewed the evidence as required by the SSR 96-8p including medical history, work history, and recorded observations, and did not err when determining the low-stress environment was no longer applicable based on the improvement in Plaintiff's condition.

Turning to the third *Mascio* error, the Fourth Circuit instructed that a Plaintiff's credibility must be assessed before her RFC is determined. *Mascio*, 780 F.3d at 639. The determination of the claimant's credibility is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) . . . which could reasonably be expected to produce the pain or other symptoms alleged." *Mitchell v. Astrue*, No. 2:11-CV-00056-MR, 2013 WL 678068, at *2 (W.D.N.C. Feb. 25, 2013) (quoting *Craig*, 76 F.3d at 594). If there is evidence to that effect, the ALJ must then "evaluate 'the intensity and persistence of the claimant's pain, and the extent to which it affects [her] ability to work.'" *Mitchell*, 2013 WL 678068, at *2 (quoting *Craig*, 76 F.3d at 595). In *Mascio*, the ALJ erred by determining a

claimant's RFC before assessing her credibility and using the following boilerplate without further analysis: "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Mascio*, 780 F.3d at 639. The Court advised, however, that this type of error may be harmless if a claimant's credibility is properly analyzed elsewhere.

In the present case, the ALJ properly analyzed the credibility of Ms. Williamson and did not use boilerplate language in its determination. (Tr. 19, 23, 74) The ALJ explained that Plaintiff was not entirely credible because of contradictions between her statements and actions. Plaintiff alleged that she had been disabled since 2010, however she was employed as a certified nursing assistant, where she cared for patients. (Tr. 19) The ALJ found that her employment in a demanding job offset her statements that she was unable to work. (Tr. 19) The ALJ also that reasoned the high-demanding nature of the role suggested Plaintiff's ability to work in a less demanding position. (Tr. 20) The medical experts, such as Dr. Faulcon, stated that Plaintiff's position was "mild" and she was stable. (Tr. 22) The ALJ also cited other evidence, such as the receipt of unemployment benefits, to show the Plaintiff was able to work and that her statements to the contrary should be discredited. (Tr. 20) For these reasons, the ALJ did not base Plaintiff's credibility on a pre-determined RFC score, but properly analyzed her credibility.

### B. Reliance on the Grids

Vocational experts are required to testify when a claimant demonstrates the presence of a combination of nonexertional and exertional impairments. *Smith v. Schweiker*, 719 F.2d 723, 725 (4th Cir. 1984). However, not every nonexertional limitations constitutes a nonexertional impairment that affects the individual's residual functional capacity to perform work. *Id.* If a plaintiff's nonexertional impairments do not affect her RFC, the ALJ may rely upon the grids in

determining whether she is capable of work. *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983) ("The grids may satisfy the Secretary's burden of coming forward with evidence as to the availability of jobs the claimant can perform only where the claimant suffers solely from exertional impairments."); *see also Hedrick v. Colvin*, No. 5:11-CV-113-RLV-DCK, 2013 WL 2434612, at *5 (W.D.N.C. June 4, 2013) ("[R]eliance on the Grids is precluded only if the nonexertional condition in question is credibly found to affect the individual's RFC to perform work of which he is otherwise exertionally capable.").

SSR 85-1R establishes the framework for evaluating nonexertional impairments. SSR 85-15 (S.S.A. 1985). For mental impairments, the "decisionmaker must not assume that failure to meet or equal a listed mental impairment equates with capacity to do at least unskilled work. This decision requires careful consideration of the assessment of RFC." *Id.* When a claimant only has a mental impairment, the final step is determining if the claimant can perform unskilled work. *Id.*

Plaintiff alleges the ALJ erred by not employing a vocational expert, "despite significant evidence of non-exertional limitations." (Plaintiff's Memorandum in Support, Doc. No. 13 at 7) However, the mere presence of a nonexertional limitation does not preclude use of the Grids, "as nonexertional limitations rise to the level of nonexertional impairments and preclude the use of the guidelines only when the limitations are significant enough to prevent a wide range of gainful employment at the designated level." *Rogers v. Barnhart*, 204 F. Supp. 2d 885, 895 (W.D.N.C. 2002). The ALJ determined that Plaintiff had only a de minimis nonexertional limitation, and that, accordingly, she was limited to jobs "performing the simple, routine tasks of unskilled work." (Tr, 17) In making this determination, the ALJ considered medical evidence and claimant's testimony pursuant to 20 C.F.R. §404.1529, SSR 96-4p, and SSR 96-7p. (Tr. 17) The

11

ALJ considered the state agency consultants, who determined there was no exertional limitations for Ms. Williamson. (Tr. 23) Furthermore, the consultants concluded her mental impairments enabled her to perform unskilled work in a low stress environment. (Tr. 23) The record does not suggest there are "limitations are significant enough to prevent a wide range of gainful employment at the designated level." *Rogers*, 204 F. Supp. 2d at 895. As a result, the Court concludes reliance on the Grids and not a vocational expert was appropriate.

### C. "Global Assessments of Functioning" opinions of treating psychiatrists and therapists

A GAF score is "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning." *Powell v. Astrue*, 927 F. Supp. 2d 267, 273 (W.D.N.C. 2013) (quoting *White v. Comm'r of Soc. Sec.,* 572 F.3d 272, 276 (6th Cir. 2009)). Failure to reference or discuss a GAF score is often insufficient to reverse a disability determination, *Mitchell*, 2013 WL 678068, at *8 (W.D.N.C. Feb. 25, 2013) (citing *Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 241 (6th Cir.2002)), particularly when an ALJ has examined the treatment notes and records on which the GAF score was based, *Love v. Astrue,* No. 3:11 CV14–FDW–DSC, 2011 WL 4899989, at *4 (W.D.N.C. Sep. 6, 2011). "A GAF score is thus not dispositive of anything in and of itself" and has no direct legal or medical correlation to the severity requirements of social security regulations." *Minish v. Astrue*, No. 1:12CV01, 2013 WL 1010437, at *4 (W.D.N.C. Mar. 14, 2013) (quoting *Oliver v. Comm'r of Soc. Sec.*, 415 Fed. App'x. 681, 684 (6th Cir. 2011)).

Here, Plaintiff argues that the ALJ erred by not giving weight to the GAF scores in the 40-50 range assigned by treating physicians. (Plaintiff's Memorandum in Support, Doc. No. 13 at 10) The ALJ reviewed treatment notes describing Plaintiff as "very conscious of her obligations to work" and "believ[ing] she was capable of work during the period in question."

(Tr, 21) The ALJ also referenced treatment notes regarding the "mild impacts" on Ms. Williamson's active functioning, her reduced feelings of stress, and her wellness plan. (Tr. 21) The ALJ continued to track and evaluate treatment notes from July 2010 through July 2013. (Tr. 21) Thus, the ALJ properly analyzed the record and notes for the treating physicians and psychiatrists, on which the GAF scores were based and the failure to cite specific GAF scores in its assessment was harmless.

> **D. Considering all of Plaintiff's diagnosed impairments and whether evidence was "cherry picked"**

Plaintiff next argues that the ALJ ignored Plaintiff's diagnoses of major depressive disorder, anxiety, and obesity, and relied on "cherry picked" evidence in determining her RRC. Plaintiff is correct that the ALJ did not use the terms major depressive disorder and anxiety to describe Plaintiff's mental impairment, but rather employed the more general term "mood disorder." (Tr. 14) However, the ALJ explained that Plaintiff's symptoms included a "pattern of 'shutting down'" and "becoming depressed when encountering stress." (Tr. 14) The ALJ also reviewed Plaintiff's description of a recent depressive episode and its effect on her work (Tr. 14), as well as Dr. Joshua Broman-Fulks's diagnosis that Plaintiff was suffering from "major depressive disorder, recurrent and mild." (Tr. 15) Moreover, the ALJ evaluated her mental impairments under Listing 12.04, which applies to affective disorders including depression, and 12.06, which applies to anxiety disorders. (Tr-16-17) Thus, the ALJ considered the relevant evidence related to Plaintiff's mental impairments in reaching its determination of her RFC, and any failure to use the term "major depressive disorder" or "anxiety" in describing those impairments is harmless.

Turning to Plaintiff's obesity, the ALJ expressly considered Plaintiff's weight and treatment records recommending that she lose weight, follow a controlled diet, and exercise. (Tr.

13

15-16) The ALJ found, however, that Plaintiff's obesity does not cause more than a minimal impact on her ability to perform basic work activities, as described in 20 C.F.R. § 404.1521. (Tr. 16) In other words, it has very little impact on her ability to engage in "physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1521. This finding is consistent with Plaintiff's medical records, which, as the government points out, include no restriction on physical activity from any medical source. (Memorandum in Support at 18, Doc. No. 16) Indeed, Plaintiff is unable to identify significant physical limitations caused by her obesity that are supported by the record. Accordingly, the ALJ committed no error in reaching its determination that Plaintiff's obesity did not constitute a severe impairment.

Finally, Plaintiff argues that the ALJ relied on "cherry picked" evidence to support its finding that she was not disabled. (Tr. 17-24) She recites a long list of evidence in the record that she claims the ALJ ignored. However, the ALJ is required to evaluate the record as a whole, and is not required to mention every piece of evidence. *See Mitchell v. Colvin*, No. 5:13-CV-00171-FDW-DSC, 2014 WL 4793236, at *4 (W.D.N.C. Sept. 25, 2014). Here, the ALJ considered and cited various pieces of evidence that supported his determination, and explained his decision to discount contradictory evidence.

### E.  Treatment of Plaintiff's 2011 receipt of unemployment compensation

In her last assignment of error, Plaintiff argues that the ALJ assigned undue weight to her receipt of unemployment benefits. "While receiving unemployment benefits may not always preclude a finding of disability, it is among the many factors that may well support a determination that a claimant is not credible, inasmuch as representing to a state employment agency that one is able to work is usually inconsistent with a claim of disability." *Clark v. Astrue*, No. 3:12-CV-00122-MOC, 2012 WL 6728441, at *3 (W.D.N.C. Dec. 28, 2012); *see also*

14

*Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir.2005) (explaining that the "decision to apply for unemployment benefits and represent to state authorities and prospective employers that [s]he is able and willing to work" is a factor in assessing a claimant's subjective complaints of disability). Here, the ALJ appropriately considered Plaintiff's receipt of unemployment benefits in assessing her credibility. He concluded that her statements to the North Carolina agency that she was ready and able to work, when considered in context of her high-stress part time job and health improvements through therapy, suggested that her limitations were not as severe as she represented. (Tr. 19-23) Accordingly, the ALJ committed no error in his consideration of her unemployment benefits.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **DENIED**. The Commissioner's Motion for Summary Judgment is **GRANTED**, and the decision of the ALJ is **AFFIRMED**.

**SO ORDERED.**

Signed: September 16, 2016

Graham C. Mullen
United States District Judge